UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ALPHONSE HOTEL CORPORATION,            :        13 Civ. 7859 (DLC)
                                       :
                    Plaintiff,         :
                                       :
        -v-                            :        OPINION & ORDER
                                       :
NAM T. TRAN,                           :
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X

APPEARANCES

For the Plaintiff Alphonse Hotel Corporation:

Kevin L. Smith
David A. Sifre
Michele L. Pahmer
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, New York 10038

For the Defendant Nam Tran

George Bochetto
David P. Heim
Albert Belmonst
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102


DENISE COTE, District Judge:

     Plaintiff Alphonse Hotel Corporation ("AHC"), brings a

motion for partial summary judgment pursuant to Rule 56, Fed. R.

Civ. P.  AHC requests an order dismissing defendant Nam Tran's

("Nam") eight counterclaims ("Counterclaims"), which seek a

declaratory judgment that an oral joint venture agreement (the "Joint Venture") existed between Nam and AHC, and relief in connection with a purported breach of that Joint Venture, as well as a declaratory judgment that a lease purportedly entered into by AHC and Nam in connection with the former Franklin Chocolate Factory at 2101 Washington Avenue in Philadelphia, Pennsylvania (the "Lease" and the "Property") is enforceable, and for relief in connection with a purported breach of the Lease.  AHC requests an order granting AHC's first and third claims in its amended complaint, to wit, a declaration that the Lease is void, and a declaration that there is no enforceable Joint Venture agreement between AHC and Nam.  For the following reasons, AHC's motion is granted in full.

**BACKGROUND**

The following facts are uncontroverted or taken in the light most favorable to Nam.  AHC is a New York corporation.[1]

---

[1] AHC's certificate of incorporation provides that

[t]he purpose or purposes for which this corporation is formed, are as follows, to wit:

To acquire real property by purchase, lease, or otherwise; to erect, repair and maintain hotel and motel buildings, garages and other structures thereon.  To conduct a general hotel, motel, restaurant, and café business.  To establish, maintain and operate newsstands, tobacco counters, novelty shops, ticket agencies, barber shops, beauty

AHC owns and manages several real estate properties.  One of those properties is the Property which is the subject of this dispute.  The Property is described by Nam as an "enormous abandoned four-story former chocolate factory and warehouse." It was acquired by AHC on February 7, 2007, for $5,750,000.

Defendant Nam is the oldest son of Truong Dinh Tran ("Truong"), now deceased.  Truong was the founder and former President of AHC.  Upon his death in May of 2012, Truong owned eighty percent of the shares of AHC.  The remaining shares were, and are, held five percent each by Sang K. Nguyen, Hung Nguyen ("Hung"), Cham Nguyen ("Cham"), and Hoa Pham.  Truong served as the President and sole director of AHC until he suffered a stroke in September 2008.  Following the stroke, AHC added two seats to its board of directors and appointed Hung and Cham as directors, in addition to Truong.  Truong stepped down as President of AHC in September or October of 2010.[2]  Hung was elected President of AHC in a "Unanimous Written Consent of the

shops, tennis courts and swimming pools.

[2] The parties dispute the date on which Truong stepped down as President.  AHC contends that Truong stepped down no later than September 30, 2010, the date on which the Board of Directors' Unanimous Written Consent naming Hung as President purported to take effect.  Nam contends that Truong did not step down as President until October 27, 2010, the date on which that document was notarized and signed.  It is not necessary to resolve this question at this point because AHC states that "[f]or purposes of this summary judgment motion only, AHC does not rely on Truong's resignation as President of AHC as the basis for his lack of authority."

Board of Directors," which states that it is "executed . . . as of September 30, 2010," but which is notarized and dated October 27, 2010.

Truong died intestate in May of 2012.  Upon Truong's death, control of AHC and Truong's estate was contested.  Two lawsuits were instigated: one by shareholders of AHC in the Supreme Court of New York, County of New York ("Shareholder Litigation"), and one by claimants to Truong's estate in the Surrogates Court of New York County ("Estate Litigation").  In October of 2012 the courts overseeing the Shareholder Litigation and the Estate Litigation appointed the Honorable Stanley Parness, a former Supreme Court Justice, as Temporary Administrator of Truong's estate ("Administrator").  The Administrator thereby took control of Truong's 80% share of AHC, and in April of 2013 he assumed management of AHC as its President and sole director.

Upon assuming his position, the Administrator discovered that AHC owned the Property.  The Administrator ultimately decided that it was in the interest of AHC to sell the Property. In searching for the keys to the property, the Administrator learned that Nam was the purported lessee of the Property.  In response to the Administrator's inquiries, Nam produced the Lease between AHC and Nam, naming Nam as the lessee of the Property and AHC as the lessor.

On October 10, 2013, AHC commenced a declaratory judgment

4

action in the Supreme Court of New York, County of New York, seeking a judgment that the Lease is invalid, as well as money damages for Nam's use and occupancy of the Property since October 18, 2010.  Nam removed the action to this Court pursuant to 28 U.S.C. § 1441 on November 4, 2013.[3]  AHC filed an amended complaint on December 4.  Nam answered the amended complaint on February 7, 2014.  With that answer, Nam pled the eight Counterclaims addressed to the existence of the alleged Joint Venture, which Nam contends was entered into prior to the 2007 acquisition of the Property.  Nam also seeks to recover for AHC's purported breach of the terms of the alleged Joint Venture.  The Lease and the alleged Joint Venture will be described below.

I. <u>Joint Venture</u>

Nam contends that he entered into an oral joint venture agreement with Truong (acting on behalf of AHC) at some time in

_____

[3] On October 22, 2013, defendant Tran filed a declaratory judgment action concerning the same dispute in the Court of Common Pleas of Philadelphia County in Pennsylvania.  Tran moved to dismiss, transfer, or stay the action in this Court in favor of the later-filed action on December 10.  The parties submitted briefing, and the Court heard argument on the motion at a pretrial conference on January 24, 2014.  For the reasons stated on the record at that conference, the Court denied defendant's motion and stayed the Pennsylvania action.  Tran brought a motion for reconsideration, which was denied.  <u>Alphonse Hotel Corp. v. Tran</u>, 13 Civ. 7859 (DLC), 2014 WL 516642 (S.D.N.Y. Feb. 2, 2014).

or before 2007, to develop the then dilapidated Property into a
renovated mixed use property to be called "New Vietnam."  The
Joint Venture purportedly planned that "New Vietnam" would
contain a "Vietnamese Cultural Center," as well as other
residential and commercial development.  Nam submits no
documentary evidence mentioning the existence of the alleged
Joint Venture.  Instead, Nam submits his own declaration
testifying to the existence of the Joint Venture, a declaration
of Nam's wife, Ha Chu Tran ("Ha Chu") testifying to actions
undertaken in securing regulatory approvals to redevelop the
Property purportedly in the name of the Joint Venture, various
documents evidencing actions undertaken to secure design and
regulatory approval for the redevelopment of the Property, and a
copy of the Lease, which Nam contends was executed to secure
Nam's stake in the Joint Venture during the period of
redevelopment.

     Nam asserts that under the terms of the Joint Venture AHC
was to provide the capital for the redevelopment of the
Property, and Nam and his family would provide the "sweat
equity" by working with professionals to design the
redevelopment of the Property, and to manage the redeveloped
property.

     Nam describes the terms of the Joint Venture as follows:

     (i) AHC would purchase an appropriate property in

Philadelphia for redevelopment, (ii) the
redevelopment, construction and carrying costs for the
property would be funded entirely by AHC, and (iii)
the time, labor and energy necessary for the process
of redeveloping, managing and subletting the property
would be handled entirely by Nam and his family.

Nam describes his responsibilities in connection with the Joint

Venture in the following way:

It was further agreed and understood that (i) Nam
would be named the lessee on a long-term lease for the
property, (ii) Nam would be responsible for overseeing
the development and the operational management of the
redeveloped facility for a minimum of twenty years,
(iii) during the leasehold period, Nam would benefit
economically through the receipt of rents, sub-rents
and other fees collected from the operation of the
redeveloped property and that (iv) at end of leasehold
period, the redeveloped real estate would be
surrendered to AHC at a greatly appreciated value.

AHC paid all costs associated with the renovation.  Nam

states that significant redevelopment and rehabilitation of the

Property was required before it could fulfill the purpose of the

Joint Venture and become a Vietnamese Cultural Center and mixed

use facility.  Nam's describes in detail several actions taken

by "Nam and his family" to design the proposed New Vietnam

center, to obtain community support for the project, and to

secure various governmental approvals for the redevelopment.

Nam states that the redevelopment work was handled "primarily

[by] Ha Chu," Nam's wife, who Nam states was selected by Truong

and Nam to be the primary manager of the Joint Venture.

7

II.  <u>Lease</u>

The Lease is dated October 18, 2010, and purports to take effect on that date, but has the date October 22, 2010 next to the signature lines.  It names "Nam T Tran" as the "Lessee," and "Alphonse Hotel Corp" as the "Lessor."  Truong had suffered a stroke in September 2008 and an "x" appears on the Lease above his typewritten name.  Hung has signed the Lease as a witness. Nam testified that he wrote Truong's initials on each page of the Lease in front of Truong.

The Lease describes the Property as the "premises" located at "2101 Washington Avenue, Philadelphia, PA 19146."  The "Term of this lease" is "20 Years."  As rent, the Lease provides that Nam will pay a total of twenty dollars in rent for the entire term to AHC.  Nam admits that he has not paid the twenty dollars.  The Lease also contains a restraint on AHC's ability to alienate the Property.  It provides that AHC "will not sell the above property during the 20 years term of this lease."  The Lease does not mention the Joint Venture.  No copy of the Lease has been found in AHC's corporate records.  And no corporate records have been found indicating that the Lease was approved by AHC's Board of Directors.

The Lease contains several provisions which relate to the question of the existence of the Joint Venture.  First, the Lease contains an integration clause, which provides,

8

inter alia, that there are no prior oral agreements between Nam and AHC in connection with the Property:

> The Lessor and Lessee hereby agree that this lease sets forth all the promises, agreements, conditions and understandings between the Lessor . . . and the Lessee relative to the demised premises, and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than as herein set forth, and any subsequent alteration, amendment, change or addition to this lease shall not be binding upon the Lessor or Lessee unless reduced to writing and signed by them.

(Emphasis supplied.)

Second, the Lease provides that AHC has no obligation to make alterations to the Property.  It provides:

> The Lessor has let the demised premises in their present condition and without any representation on the part of the Lessor, his officers, employees, servants and/or agents.  It is understood and agreed that the Lessor is under no duty to make alterations at the time of letting or at any time thereafter.

(Emphasis supplied.)

The Lease also prohibits Nam from leasing the Property, or making any improvements, without the written consent of AHC. The Lease states that

> lessee covenants and agrees that he will do none of the following things without the consent in writing of lessor: . . . (b) . . . lease . . . or sub-lease the demised premises, or any part thereof, or permit another person . . . to occupy the demised premises, or any part thereof . . . . (d) Make any alternations, improvements, or additions to the demised premises . . . .

9

(Emphasis supplied.)

AHC brought this motion for partial summary judgment on March 28, 2014.  The motion was fully submitted on May 9.

## DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denials" of the movant's pleadings.  Fed. R. Civ. P. 56(c); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment."  Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation

omitted).

I. <u>Joint Venture</u>

    A. <u>Choice of Law</u>

The parties disagree as to which state's law governs the dispute as to whether a Joint Venture exists.  Nam argues that Pennsylvania law applies, while ACH contends that New York law governs.  It is undisputed that New York choice of law rules apply.  "[C]ontract choice of law principles should generally govern an inquiry as to whether a joint venture exists." <u>Bensmiller v. E.I. Dupont de Nemours & Co., State of La.</u>, 47 F.3d 79, 83 (2d Cir. 1995).  Under New York choice of law principles, "in contract cases, the 'center of gravity' or 'grouping of contacts' analysis is to be applied in determining the choice of law."  <u>GlobalNet Fin..Com, Inc. v. Frank Crystal & Co., Inc.</u>, 449 F.3d 377, 383 (2d Cir. 2006).

> The "center of gravity" or "grouping of contacts"
> choice of law theory allows a court to consider a
> "spectrum of significant contacts . . . . [F]actors
> include the place of contracting, negotiation and
> performance; the location of the subject matter of the
> contract; and the domicile of the contracting parties.

<u>Id.</u> (citation omitted).  "[T]he places of contracting and performance . . . are given heavy weight in this analysis." <u>Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.</u>, 295 F.3d 256, 261 (2d Cir. 2002) (citation omitted).  "New York

courts may also consider public policy where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." Id. (citation omitted).

Pennsylvania law applies to the Joint Venture dispute.  The alleged "place of contracting" and "negotiation" is Pennsylvania.  Nam contends that he and Truong entered into their joint venture agreement in Philadelphia.  The "place of performance" is also Pennsylvania.  The Property is a Pennsylvania property, and the alleged development project was to take place in Pennsylvania.  As a result, the "location of the subject matter of the contract," weighs in favor of Pennsylvania law being applied given that the Property is in Pennsylvania.  GlobalNet, 449 F.3d at 383.  Finally, Nam is domiciled in Pennsylvania, which further suggests the application of Pennsylvania law.

ACH's argument that New York's governmental interest in enforcing its statute of frauds weighs in favor of applying New York law is unavailing.  Even assuming that New York has a compelling interest in enforcing its statute of frauds in connection with out-of-state property, reliance on this factor cannot override the significant weight of the Pennsylvania contacts in this action.

    B. Parol Evidence Rule

    AHC contends that Nam's Counterclaims relying on the
existence of the Joint Venture are barred by the parol evidence
rule because terms of the Joint Venture are in conflict with
terms of the Lease, which is a later-in-time, fully integrated,
written document.  Under Pennsylvania law, the parol evidence
rule bars

        the introduction of parol evidence of antecedent or
        contemporaneous agreements, negotiations and
        understandings of the contracting parties for the
        purpose of varying or contradicting the terms of a
        contract which both parties intended to represent the
        definite and complete statement of their agreement.

Am. Bank & Trust Co. of Pennsylvania v. Lied, 487 Pa. 333, 340
(1979).

        Where the parties, without any fraud or mistake, have
        deliberately put their engagements in writing, the law
        declares the writing to be not only the best, but the
        only, evidence of their agreement.  All preliminary
        negotiations, conversations and verbal agreements are
        merged in and superseded by the subsequent written
        contract ... and unless fraud, accident or mistake be
        averred, the writing constitutes the agreement between
        the parties, and its terms and agreements cannot be
        added to nor subtracted from by parol evidence.

Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 497
(2004) (citation omitted).  "Notwithstanding the name given it,
the parol evidence rule is a rule, not of evidence, but of
substantive law."  O'Brien v. O'Brien, 362 Pa. 66, 71-72 (1949).
Moreover, "[a]n integration clause which states that a writing
is meant to represent the parties' entire agreement is also a

                                13

clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution."  <u>Yocca</u>, 578 Pa. at 498.

Nam's Counterclaims predicated on the existence of the Joint Venture are barred by the parol evidence rule.  The Joint Venture stands in direct in conflict with the integrated Lease in at least three ways.  First, the integration clause of the Lease expressly disclaims the existence of any prior oral agreements.  As described above, it states that "there are no promises, agreements, conditions or understandings, either oral or written, between [Nam and AHC] other than as herein set forth."

Second, while the crux of the Joint Venture is that AHC would be obligated to pay for a wholesale renovation of the Property in exchange for Nam's work in managing the Property, the Lease provides that AHC is "under no duty to make alterations at the time of letting or at any time thereafter."[4] Nam contends that under the Joint Venture, AHC's obligation to contribute capital for the redevelopment of the Property is the consideration that makes the Joint Venture an enforceable contract.  He states that the Joint Venture was "supported by

_____

[4] The Lease is in further conflict with the Joint Venture's purpose of redeveloping the Property in its provision that Nam may not "[m]ake any alternations, improvements, or additions to the demised premises" without the written consent of AHC.

mutual consideration" because "AHC was contributing the capital
for the redevelopment while Nam and his family members were
contributing 'sweat equity.'"  Since the Lease relieves AHC of
any obligation to improve the Property, Nam's contention that
the Joint Venture is an enforceable agreement because AHC
provided consideration in the form of a commitment to improve
the Property fails.

Third, the consideration that Nam purportedly received in
exchange for his participation in the Joint Venture was the
ability to sublease the developed property and reap financial
benefit.  But the Lease provides that Nam may not "lease . . .
or sub-lease the demised premises" without AHC's written
consent.  The Joint Venture, as pled by Nam, does not
contemplate that permission to sublease could be withheld by
AHC.  Rather, Nam pleads that under the Joint Venture "it was
agreed that the real [estate] development project would be . . .
sublet by the tenant Nam."  (Emphasis supplied.)  Indeed, if the
Joint Venture contemplated that AHC could withhold from Nam the
right to sublease the property at AHC's discretion, the Joint
Venture would have been unenforceable for lack of consideration
on the part of AHC.  See Lackner v. Glosser, 892 A.2d 21, 31
(Pa. Super. Ct. 2006) ("If the promise is entirely optional with
the promisor, it is illusory, lacks consideration, and is
unenforceable.").  In sum, because the Lease, which is later-in-

15

time, written, and integrated, contradicts the purported terms
of the Joint Venture, Nam's Counterclaims predicated on the
existence of a Joint Venture are barred.

Nam contends that his Counterclaims are not barred by the
parol evidence rule because the Joint Venture and the Lease are
"separate agreements."  Nam argues that the Lease "creat[ed] a
leasehold interest in Nam," whereas the Joint Venture "creat[ed]
Nam's rights to compensation . . . in exchange for his efforts
in developing and managing the Property for AHC."  This argument
is unavailing.  The Joint Venture and the Lease both address the
same subject: the terms of Nam's use and development of the
Property.  Indeed, the Lease expressly "sets forth all the
promises, agreements, conditions and understandings between the
Lessor . . . and the Lessee relative to the [Property]."  This
provision excludes the possibility of any enforceable prior oral
agreements "relative to" the Property.  And as described above,
core terms of the Joint Venture -- i.e., AHC's duty to improve
the Property and Nam's entitlement to rents -- are in direct
conflict with terms of the Lease.  Enforcing the Joint Venture
would consequently "var[y] or contradict[] the terms of a
contract which both parties intended to represent the definite
and complete statement of their agreement."  Lied, 487 Pa. at
340.

The two Pennsylvania law cases cited by Nam in support of

the proposition that the parol evidence rule does not apply are inapposite because the oral contracts in those cases did not purport to vary material terms of the integrated, written contracts. In Kravitz v. Mudry, 189 A.2d 311 (Pa. Super. 1963), the court held that parol evidence of an oral agreement between a homebuyer and seller that the seller would repair defects in materials and workmanship in a house under construction was not barred by an integrated contract for the sale of that house because the written agreement only "covered the construction of an unfinished house" and the "builder still had the duty of constructing a house according to specifications reasonably free of defects;" a subject not addressed by the contract to sell the unfinished house. Id. at 312. And in Cohn v. McGurk, 479 A.2d 578 (Pa. Super. 1984), the court held that the execution of a mortgage and note did not bar evidence of prior oral agreements between the mortgagor and a mortgagee that the mortgagee would make certain payments to the mortgagor as inducement for entering into the mortgage. Id. at 582. The Pennsylvania Superior Court explained why Cohn is inapposite where parol evidence would vary the terms of an integrated writing:

> In Cohn, supra, evidence of the separate contracts was
> not offered to alter the terms of the mortgage but,
> rather, to explain that appellee-mortgagee's refusal
> to comply with decedent's will precipitated
> appellants-mortgagors' breach of the mortgage
> agreement, i.e., had appellee given them the funds as
> agreed, they would have complied with the terms of the

17

> mortgage and note.  Here, however, [appellant] seeks
> to introduce evidence of separate agreement for the
> sole purpose <u>of varying</u> the terms of the mortgage. . .
> .  The alleged separate agreement herein is not, as in
> <u>Cohn</u>, <u>supra</u>, a true separate contract related to a
> different subject matter.

<u>Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.</u>, 622 A.2d 367, 373-74 (Pa. Super. 1993).  Unlike in <u>Kravitz</u> and <u>Cohn</u>, the two agreements here are addressed to the same subject matter, and are in conflict.  <u>See</u> <u>Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments</u>, 951 F.2d 1399, 1405-06 (3d Cir. 1991) (applying Pennsylvania's parol evidence rule when "the alleged oral agreement dealt with and directly contradicted the writings.").

Nam contends in a footnote that if the Lease is held void, the parol evidence rule cannot bar Nam's Joint Venture Counterclaims.  While, as explained below, the Lease is void, this argument fails because a written and integrated contract does not have to be enforceable to bar the terms of prior inconsistent agreements if the circumstances demonstrate that the parties intended the integrated contract to displace prior agreements.  In its articulation of the parol evidence rule, the Restatement (Second) of Contracts, states:

> (3) An integrated agreement that is not binding or
> that is voidable and avoided does not discharge a
> prior agreement.  <u>But an integrated agreement, even
> though not binding, may be effective to render
> inoperative a term which would have been part of the
> agreement if it had not been integrated</u>.

Restatement (Second) of Contracts § 213 (1981) (emphasis
supplied).  Comment d of the Restatement's parol evidence
section further explains that "[t]he circumstances may . . .
show an agreement to discharge a prior agreement without regard
to whether the integrated agreement is binding, and such an
agreement may be effective."  Id. cmt. d. The Restatement
provides a useful illustration:

> 6. A and B enter into a contract that B will build a
> house on A's land for a price.  Later B offers to add
> a porch if A will sign a new contract.  They then
> enter into an integrated agreement in which B promises
> to build according to the original plans and A
> promises to pay an extra $2,000.  If the integrated
> agreement is inconsistent with the porch offer, or if
> it is a completely integrated agreement and the matter
> of the porch is within its scope, the integrated
> agreement is effective to discharge the porch offer
> but is not binding for lack of consideration.

Id. (emphasis supplied).  Here the Lease "show[s] an agreement
to discharge [any] prior agreement[s]" with respect to the
Property.  Id. cmt. d. It does so explicitly by disclaiming any
"promises, agreements, conditions or understandings" regarding
the Property.[5]  And it does so implicitly by contradicting

---

[5] While a joint venture agreement might normally not be expected
to constitute a term that would "have been part of" a lease
agreement if the lease "had not been integrated," Restatement
(Second) of Contracts § 213 (1981), the calculus changes when,
as here, the Lease expressly provides that "there are no
promises, agreements, conditions or understandings, either oral
or written, between the parties other than as herein set forth"
"relative to [the Property]."  In this circumstance, any prior
oral joint venture agreement would have to have been part of the

material terms of the Joint Venture.  As a result, Nam's Joint Venture Counterclaims are barred even though the Lease is void.


   II.  The Lease

     AHC moves for a declaration that the Lease is void.  The Lease has no contractual choice of law provision.  The parties both assume that New York corporate law governs the question of whether the Lease is void.  "Under New York choice of law rules . . . where the parties agree that New York law controls, this is sufficient to establish choice of law."  Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).  Such agreement can be implicit.  Id.  Therefore, New York law will be applied.

     AHC argues that the Lease is void under New York corporate law as a gift or act of corporate waste not authorized by AHC's certificate of incorporation or any other provision of New York law.  AHC contends that Truong was not authorized to make a "gift[] of corporate property to be made to the child[] of insiders for the benefit of the insiders' family."  AHC does not contest, for the purpose of this motion, that Truong was the President of AHC at the time the Lease was signed, and concedes that "the president of a corporation . . . [has] implied authority to do necessary acts within the scope of his usual and

Lease, according to the Lease's own terms. (Emphasis supplied.)

20

ordinary duties." Vig v/ Deka Realty Corp., 143 A.D.2d 185, 187
(2d Dept. 1988).  AHC contests, however, that the execution of
the Lease was a necessary act within the scope of Truong's usual
and ordinary duties.  Nam counters that Truong had the power to
bind AHC as President, and that his decision to enter into the
Lease was a business decision intended to benefit the company
through the Property's renovation, and is protected by the
business judgment rule.  Nam argues in the alternative that AHC
has waived any corporate waste objection through years of
acquiescence to AHC transactions made to benefit Truong's family
members.

     In New York, "it is settled law that waste or a gift of
corporate assets are void acts and cannot be ratified by a
majority of stockholders." Aronoff v. Albanese, 446 N.Y.S.2d
368, 370 (2d Dept. 1982).  "The essence of a claim of gift is
lack of consideration and the essence of waste is the diversion
of corporate assets for improper or unnecessary purposes." Id.
To prove corporate waste, it is necessary to "demonstrate that
no person of ordinary sound business judgment would say that the
corporation received fair benefit." Hanson Trust PLC v. ML SCM
Acquisition, Inc., 781 F.2d 264, 279 n.9 (2d Cir. 1986)
(applying New York law) (citation omitted).  "The existence of
benefit to the corporation, in turn, is generally committed to
the sound business judgment of the directors." Aronoff, 446

N.Y.S.2d at 370. "[U]nder the New York business judgment rule, the actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith." <u>Stern v. Gen. Elec. Co.</u>, 924 F.2d 472, 476 (2d Cir. 1991). "[A]llegations of 'waste,' standing alone, will not be enough." <u>Id.</u>  It is "settled law," however, that "when a corporate director or officer has an interest in a decision, the business judgment rule does not apply." <u>In re Croton River Club, Inc.</u>, 52 F.3d 41, 44 (2d Cir. 1995).  "Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally." <u>Marx v. Akers</u>, 88 N.Y.2d 189, 202 (1996).  The business judgment rule "shields the deliberations and conclusions of the chosen representatives of the board only if they possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment." <u>Auerbach v. Bennett</u>, 47 N.Y.2d 619, 631 (1979).  "Once a prima facie showing is made that directors have a self-interest in a particular corporate transaction, the burden shifts to them to demonstrate that the transaction is fair and serves the best interests of the corporation and its shareholders." <u>Norlin Corp. v. Rooney, Pace Inc.</u>, 744 F.2d 255, 264 (2d Cir. 1984) (applying New York law); <u>see also</u> <u>Alpert v. 28 Williams St. Corp.</u>, 63 N.Y.2d 557, 570 (1984) ("when there is

an inherent conflict of interest, the burden shifts to the
interested directors or shareholders to prove good faith . . . .
.").  These rules, stemming from fiduciary obligations owed by
corporate officers to shareholders, apply as well to closely
held corporations.  See Global Minerals & Metals Corp. v. Holme,
824 N.Y.S.2d 210, 2014 (1st Dept. 2006) ("corporate officer and
director" of "a closely held corporation" owed a fiduciary duty
to the other shareholders).

     Even assuming, as Nam contends, that Truong had the
authority to bind AHC at the time he executed the Lease, the
Lease is still void as a gift and act of corporate waste.  See
Meredith v. Camp Hill Estates, Inc., 430 N.Y.S.2d 383, 385 (2d
Dept. 1980)("transfer without consideration" of valuable
corporate property was "so far opposed to the true interests [of
the corporation] as to lead to the clear inference that no one
thus acting could have been influenced by any honest desire to
secure such interests." (citation omitted)).

     Nam principally relies on the business judgment rule and
argues that under that rule, AHC may not second-guess Truong's
business judgment absent a showing of fraud or bad faith.  As a
threshold matter, the business judgment rule does not apply to
this transaction because Truong was not a disinterested actor.
See In re Croton River Club, 52 F.3d at 44.  As Nam
acknowledges, this transaction falls into a category of

23

transactions by Truong over the years in which he transferred corporate assets in order "to create financial security for his family and to provide for his children."  Truong's transfer of corporate assets for the financial benefit of chosen family members constitutes a benefit to Truong at the expense of AHC, which removes his decisions from the protection of the business judgment rule.  See Marx, 88 N.Y.2d at 202; cf. Lewis v. S. L. & E., Inc., 629 F.2d 764, 770 (2d Cir. 1980) (declining to apply the business judgment rule when directors of closely held corporation leased property at artificially low rates to another closely held corporation in which they had a financial interest).

AHC has shown that AHC received essentially no consideration for the Lease and no "fair" benefit.  The Lease gave Nam sole access to any revenue from the Property in exchange for twenty dollars and barred AHC from selling the Property for twenty years.  Nam does not carry his burden to show that the Lease "serves the best interest of the corporation and its shareholders."  Norlin, 74 F.2d at 264.  As a result, the Lease is void both as a gift for no consideration, see Aronoff, 446 N.Y.S.2d at 370, and as an act of corporate waste

which diverts a valuable corporate asset for no legitimate
corporate purpose or fair benefit to the corporation.  See id.[6]


   III. Discovery

   Nam complains that he has been denied discovery necessary
to oppose this motion and has submitted an affidavit pursuant to
Rule 56(d), Fed. R. Civ. P., describing that discovery.  Having
reviewed Nam's Rule 56(d) affidavit, the Court concludes that
there is no reason to delay the resolution of this motion.
Litigants requesting a delay of adjudication of a summary
judgment motion on the ground that they have been deprived of
material discovery materials "must show that the material sought
is germane to the defense, and that it is neither cumulative nor
speculative, and a 'bare assertion' that the evidence supporting
a plaintiff's allegation is in the hands of the defendant is
insufficient."  Paddington Partners v. Bouchard, 34 F.3d 1132,
1138 (2d Cir. 1994) (citation omitted).

   Nam does not identify with a reasonable level of
specificity the documents in AHC's possession which would alter

---

[6] Nam's argument that AHC has waived any gift or corporate waste
objections through years of acquiescence to Truong's use of
corporate property to benefit family members is misplaced.  As
explained above, a transaction constituting a gift or corporate
waste is a "void act[]" which "cannot be ratified" by the
corporation.  Aronoff, 446 N.Y.S.2d at 370.  Because the Lease
was void from its inception, the doctrine of waiver does not
apply here.

the outcome of this motion, nor the basis for any belief that they exist.  His Rule 56(d) affidavit is essentially a list of every discovery request he has made in this litigation.  For instance, documents necessary to establish Troung's authority to enter the Joint Venture or execute the Lease are unnecessary for the purpose of this motion since his authority is presumed. Documents concerning an investigation of the Administrator appointed in 2012 are irrelevant.  Documents related to the valuation of the Property and architectural drawings of the Property are similarly irrelevant.  Other discovery requests are couched in general terms, and frequently constitute "bare assertions" that AHC is withholding unspecified germane material.  Id.

### CONCLUSION

AHC's March 28, 2014 motion for partial summary judgment is granted.  Nam's Counterclaims are dismissed.  Judgment on AHC's first and third claims in its amended complaint is granted.

SO ORDERED:

Dated:    New York, New York
          August 1, 2014

_____
DENISE COTE
United States District Judge

26